**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JAMES MILAS,** | ) | **C.A. No. 19-313 Erie** |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **District Judge Susan Paradise Baxter** |
| | ) | |
| **JOHN E. WETZEL, et al.,** | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION**

**I.      INTRODUCTION**

**A.      Relevant Procedural History**

Plaintiff James Milas, an inmate incarcerated at the State Correctional Institution at Forest in Marienville, Pennsylvania ("SCI-Forest"), initiated this *pro se* civil rights action by filing a complaint in the Court of Common Pleas of Forest County, Pennsylvania. The action was subsequently removed to this Court pursuant to a Notice of Removal filed by Defendants on October 28, 2019. The following individuals are named as Defendants: Department of Corrections Secretary John E. Wetzel ("Wetzel"); Derek Oberlander, Superintendent at SCI-Forest ("Oberlander"); Robert Dickey, Security Lieutenant at SCI-Forest ("Dickey"); James, Cert. Team Officer at SCI-Forest ("James"); Raymond Burkehart, Property Lieutenant at SCI-Forest ("Burkehart"); C.O. II Sgt. Snyder, Cert. Team Sgt. at SCI-Forest ("Snyder"); Lisa Reeher, Grievance Coordinator ("Reeher"); and Dorina Varner, Chief Grievance Officer ("Varner").

Plaintiff lists multiple claims against one or more of the Defendants, most of which are

1

generalized Pennsylvania tort claims.[1] He also makes brief reference to a constitutional claim of retaliation. Despite the summary listing of the foregoing claims, the crux of the complaint focuses on two principal constitutional claims: a First Amendment claim of denial of access to the courts, and a Fourteenth Amendment due process claim of confiscation and destruction of property.

On January 27, 2020, Defendants filed a motion to dismiss [ECF No. 9] arguing that Plaintiff has failed to allege the personal involvement of any Defendants other than Defendants Snyder and James, and Plaintiff has failed to state a claim upon which relief may be granted against either Defendant Snyder or Defendant James. Plaintiff has since filed a brief in opposition to Defendants' motion [ECF No. 31]. This matter is now ripe for consideration.

### B.   Relevant Factual History

Plaintiff alleges that from late 2016 through March 2017, Plaintiff was receiving legal assistance from two fellow inmates, Joseph Harville and George McGraffe, regarding appeals Plaintiff had pending before the Third Circuit Court of Appeals (ECF No. 1-2, Complaint, at ¶ 4). While conducting cell searches, Defendants Snyder and James confiscated Plaintiff's "active legal papers" that were found in the possession of inmates Harville and McGraffe (Id. at ¶ 6). Plaintiff filed a grievance concerning the confiscation of his paperwork and asked about its whereabouts, but prison officials throughout the grievance process responded that they had "no

---

1

These claims are simply listed in paragraph 12 of the complaint, without supporting allegations, as follows: Pennsylvania's strict liability doctrine; Pennsylvania's Tort Claims Act and doctrine; Pennsylvania's tortious Government interference doctrine; Pennsylvania's official oppression doctrine; Pennsylvania's retaliation of Constitutionally protective conduct; Pennsylvania's willful misconduct and deliberate indifference; Pennsylvania' Government interference and denial of access to the courts; Pennsylvania's personal injury in replevin, assumpsit, and chattel property doctrine; Pennsylvania's doctrine against institutional vandalism and criminal mischief; Pennsylvania's doctrine against abuse of duties and powers; Pennsylvania's against deliberate obstruction of a government function; Pennsylvania's doctrine against gross negligence, malicious and capricious acts; Pennsylvania's doctrine against fraudulent acquiesces; and Pennsylvania's doctrine against malicious, arbitrary, and capricious government actions. (ECF No. 1-2, at ¶ 12(d)-(q)).

idea" where the legal papers were. As a result of the loss of his legal paperwork, Plaintiff alleges

that all of his appeals were denied.

## II.   DISCUSSION

### A.   Personal Involvement

It is well-settled that liability under § 1983 requires a defendant's "personal involvement"

in the deprivation of a constitutional right. See Gould v. Wetzel, 2013 WL 5697866, at *2 (3d

Cir. Oct. 21, 2013), citing Argueta v. U.S. Immigration and Customs Enforcement, 643 F.3d 60,

73 (3d Cir. 2011). This means that the defendant must have played an "affirmative part" in the

complained-of misconduct. Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009) ("In a § 1983 suit …

[a]bsent vicarious liability, each Government official, his or her title notwithstanding, is only

liable for his or her own misconduct."); Oliver v. Beard, 358 Fed. Appx. 297, 300 (3d Cir. 2009);

Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986).

Defendants argue that Plaintiff's claims against individual Defendants Wetzel,

Oberlander, Dickey, Burkehart, Reeher, and Varner must be dismissed because Plaintiff has

failed to establish their personal involvement in any of the alleged constitutional violations at

issue in this case.

Initially, Defendants correctly note that Plaintiff has failed to state any allegations against

any of these Defendants, whatsoever. They are simply named in the caption and listed by name

and title only in the introductory portion of the complaint; however, there is no mention of any of

them in the main body of the complaint. Additionally, Plaintiff's brief in opposition to

Defendants' motion makes clear that the only alleged involvement of Defendants Wetzel,

Oberlander, Dickey, Reeher, and Varner, is that "as 'supervisors' in training, management &

control, said defendants are liable for the failure of their subordinate employees."  (ECF No. 31,

at p. 7). In other words, Plaintiff is apparently seeking to hold said Defendants vicariously liable for the alleged actions of Officers James and Snyder; however, it is well-settled that section 1983 liability cannot be predicated solely on the basis of *respondeat superior*. Rizzo v. Goode, 423 U.S. 362 (1972). Thus, there is no basis on which to establish the personal involvement of Defendants Wetzel, Oberlander, Dickey, Reeher, and Varner, in any of the claims raised in the complaint, and they will be dismissed from this action, accordingly.

The same cannot be said of Defendant Burkehart. In his opposition brief, Plaintiff asserts that Defendants Burkehart (apparently by virtue of his position as Property Lieutenant), acted along with Defendants James and Snyder, in failing to uphold his "duty to care for, protect, store, & properly secure" Plaintiff's legal materials "until a 'proper disposition [could] be made." (ECF No. 31, at p. 4). This is minimally sufficient to establish Defendant Burkehart's personal involvement as to Plaintiff's denial of access to courts claim, the sufficiency of which the Court will now turn.

**B.    Access to Courts Claim**

Prisoners have a constitutional right to "adequate, effective and meaningful" access to the courts. Bounds v. Smith, 430 U.S. 817 (1977).[2] Importantly, a plaintiff must demonstrate actual

---

[2] The Supreme Court has identified two general categories of denial of access to courts claims. Christopher, 536 U.S. at 412-13; see also Gibson v. Superintendent of N.J. Dep't of Law & Pub. Safety – Div. of State Police, 411 F.3d 427, 441 (3d Cir. 2005) overruled in part on other grounds as noted in Dique v. N.J. State Police, 603 F.3d 181 (3d Cir. 2010). The first type is "forward-looking" claims which allege that official action frustrates a plaintiff in preparing and filing suit at the present time. Christopher, 536 U.S. at 413. The second category covers "backward – looking" claims which allege that official acts "have caused the loss or inadequate settlement of a meritorious case, the loss of an opportunity to sue, or the loss of an opportunity to seek some particular order of relief …. These cases do not look forward to a class of further litigation, but backward to a time when specific litigation ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable. The ultimate object of these sorts of access claims, then, is not the judgment in a further lawsuit, but simply the judgment in the access claim itself, in providing relief obtainable in no other suit in the future." Christopher, 536 U.S. at 413-14 (citations omitted).

injury stemming from the denial of access.[3] Lewis v. Casey, 518 U.S. 343 (1996). The actual injury requirement "derives from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches." Id. at 349. See also Stokes v. Gehr, 399 Fed.Appx. 697, 699 (3d Cir. 2010) (the actual injury requirement articulated in Lewis is "derived from principles of standing, … an unwaivable constitutional prerequisite.").

A plaintiff must allege both an underlying cause of action, whether anticipated or lost, and official acts frustrating the litigation. Christopher v. Harbury, 536 U.S. 403 (2002). In order to state an access to courts claim, "[w]here prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an 'actual injury' – that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit." Monroe v. Beard, 536 F.3d 198, 205-06 (3d Cir. 2008) quoting Christopher, 536 U.S. at 415. "To that end, prisoners must satisfy certain pleading requirements: The complaint must describe the underlying arguable claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'" Id.

Furthermore, a plaintiff must demonstrate intent on the part of the defendants. The Third Circuit has explained:

> A denial of access claim is available where the state officials "*wrongfully and intentionally* conceal information crucial to a person's ability to obtain redress through the courts, and so *for the purpose of frustrating that right*, and that concealment, and the delay engendered by it substantially reduce the likelihood of one's obtaining the relief to which one is otherwise entitled.

---

3

Prisoners are limited to proceeding on access to courts claims challenging either their sentence (by direct or collateral attack) and their conditions of confinement, as the "impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Lewis, 518 U.S. at 355.

<u>Gibson v. Superintendent of N.J. Dep't of Law & Pub. Safety – Div. of State Police</u>, 411 F.3d 427, 445 (3d Cir. 2005). <u>See</u> <u>also</u> <u>Burkett v. Newman</u>, 2012 WL 1038914, at *3 (W.D. Pa. Feb. 21, 2012).

So then, in order to support his access to courts claims, Plaintiff is required to demonstrate that he has lost the opportunity to pursue a nonfrivolous or arguable underlying legal claim, that there is no other remedy available to him, and that Defendants James, Snyder, and Burkehart had the requisite intent to deny his constitutional right of access to courts.

Here, Plaintiff merely alleges that his "appeals were denied, due to the deliberate destruction of his legal documents" by Defendants James, Snyder, and Burkehart. (ECF No. 1-2, Complaint, at ¶ 14). Yet, Defendants correctly point out that Plaintiff filed timely submissions with the Third Circuit Court leading up to the Court's denial of Plaintiff's request for a certificate of appealability on or about January 27, 2017 (ECF No. 10-1, at p. 2). Thus, Plaintiff has failed to allege with requisite specificity how the destruction of his legal materials caused him actual injury. In particular, Plaintiff's allegations fall short of establishing that Plaintiff lost the opportunity to pursue a nonfrivolous or arguable underlying legal claim. For this reason, Defendants' motion to dismiss this claim will be granted.

Nonetheless, the dismissal of his access to courts claim will be without prejudice to Plaintiff's right to amend such claim to allege the actual injury he claims to have suffered in light of the additional facts asserted in Plaintiff's opposition brief. More specifically, Plaintiff asserts in his opposition brief that the destruction of his legal documents "caused Plaintiff to be deprived [of the] opportunity to identify, raise & develop a meritorious claim based upon 'newly-discovered' facts relating to Philadelphia Police Department Detectives 'Pitts & Dove,'" who Plaintiff claims had "improperly interfered with his witnesses and tampered with evidence in his

6

criminal case." (ECF No. 31, at p. 5). Plaintiff argues that the destruction of his legal files prevented him from "substantiat[ing] his claims of misconduct by Defectives Dove & Pitts," thus depriving him of meaningful access to the courts, particularly with regard to his appeal before the Third Circuit Court at docket number 16-3632. Although the nature and potential merit of such claim is admittedly unclear, Plaintiff will be given the opportunity to amend his complaint to more clearly define how the loss of his legal materials prevented him from raising an "arguable" claim on appeal, the precise nature of the arguable claim, and the remedy that he lost.

### C.       Fourteenth Amendment Confiscation of Property Claim

Though not entirely clear, it appears that Plaintiff has raised a Fourteenth Amendment due process claim arising from the confiscation and destruction of his legal property.[4] The Defendants argue that such claim must fail because the availability of a prison grievance procedure satisfies all the requirements of due process. The Court agrees.

The Due Process Clause was promulgated to secure individuals from the arbitrary exercise of the powers of government. The procedural aspect of the Due Process Clause guarantees the availability of certain procedural mechanisms, typically the right to notice and a hearing, before the government can deprive an individual of a liberty or property interest. In the context of depriving an inmate of his property, however,

> ... the Supreme Court has held that meaningful post-deprivation remedies provide sufficient due process for negligent deprivations of property, Parratt v. Taylor, 451 U.S. 527, 530 (1981), and intentional deprivations of property, Hudson v. Palmer, 468 U.S. 517, 533 (1984), and that requiring a pre-deprivation hearing would be absurd since it would be impossible to determine when a negligent or intentional deprivation of property would occur. Zinermon v. Burch, 494 U.S. 113, 117 (1990). **The Court of Appeals has held that the DOC's grievance procedure provides an adequate post-deprivation remedy**, see e.g. Tillman v. Lebanon County Corr. Fac., 121 F.3d 410, 422 (3d Cir. 2000), **and that**

---

4

Plaintiff also appears to invoke the Equal Protection Clause of the Fourteenth Amendment; however, Plaintiff has failed to allege any differential treatment between himself and any specific group or class of similarly situated individuals. Thus, Plaintiff has failed to meet the threshold requirement of stating an equal protection claim.

> **the existence of this post-deprivation remedy forecloses any due process claim**, Austin v. Lehman, 893 F.Supp. 448, 454 (E.D.Pa. 1995) even if an inmate is dissatisfied with the result of the process. Iseley v. Horn, 1996 WL 510090, at * 6 (E.D.Pa. Sept. 3, 1996). As [the inmate plaintiff] admits to having used the grievance procedure to attempt the return of his [property], he had access to an adequate post-deprivation remedy and even if there had been a violation of his liberty interest he was not denied the right to due process of law.

Pettaway v. SCI Albion, 2012 WL 366782 at *3-4 (W.D.Pa. Feb. 2, 2012), appeal dismissed, 487 Fed. Appx. 766 (3d Cir. 2012), citing Brooks v. DiGuglielmo, 2008 WL 5187529 at * 6 (E.D.Pa. Dec. 9, 2008) (emphasis added). See also Monroe v. Beard, 536 F.3d 198, 210 (3d Cir. 2008) ("[b]ecause prisons are constitutionally required to afford inmates only a post-deprivation remedy, we agree that the defendants' failure to give the inmates prior notice of their intended seizure of their materials did not violate the plaintiffs' Due Process rights"); Banks v. Beard, 2006 WL 2192015 at * 15 (W.D.Pa. Aug. 1, 2006)(regarding inmate plaintiff's claim that he was permanently dispossessed of his property, "[t]he Commonwealth of Pennsylvania provides an adequate post deprivation remedy in the forms of the DOC grievance system and/or a state law tort law suit against the Defendants... [which] satisfy the Fourteenth Amendment's procedural due process guarantee") (citations omitted).

Here, as in Pettaway, Plaintiff admits that he utilized the DOC's grievance process to attempt to obtain the return of his legal property. Thus, he was provided access to an adequate post-deprivation remedy that has been held to satisfy his procedural due process rights, even though he is dissatisfied with the outcome. Accordingly, Plaintiff's due process claim arising from the confiscation of his property is without merit and will be dismissed.

**D.    Retaliation**

Finally, it appears from Plaintiff's complaint and opposition brief that Plaintiff may be attempting to state a separate retaliation claim against Defendants James, Snyder, and Burkehart. In particular, Plaintiff states in his opposition brief that "defendants 'destroyed'; 'lost' his legal

file in retaliation for his use of 'jailhouse lawyers' & his filing of grievances against the government." Although Plaintiff makes this statement within the context of arguing his denial of access to courts claim, it sets forth the framework of a separate retaliation claim, which Plaintiff may or may not have intended. Thus, Plaintiff will be given the opportunity to amend his complaint to state with more particularity a claim of retaliation, to the extent he intends to do so.

An appropriate Order follows.